UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 21-CV-971

| | |
|---|---|
| WILLIAM GARDINER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | |
| KAREN KOCHER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff William Gardiner ("Gardiner") states his complaint against Defendant Karen Kocher ("Kocher") as follows:

## INTRODUCTION

During the parties' years-long romantic relationship, Gardiner advanced funds for the benefit of Kocher for (a) the purchase of a membership interest in Performitiv, LLC, which Kocher received and still owns; and (b) the purchase of a home in Pinehurst, to which Kocher received sole legal title and in which Kocher currently resides. After the parties' relationship ended, Gardiner demanded return or repayment of those funds, which total $400,000 without interest. Notwithstanding having received the full and substantial benefit of these funds, which were undisputedly not intended as gifts, Kocher has refused to repay them.

## PARTIES AND JURISDICTION

1. Plaintiff Gardiner is a citizen of and domiciled in Fairfax County, Virginia.

2. Defendant Kocher is a citizen of and domiciled in Moore County, North Carolina.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as Gardiner and Kocher are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), because Kocher resides in this district.

5. Gardiner has satisfied any applicable conditions precedent to bringing this action.

## FACTS

6. All preceding paragraphs are incorporated by reference.

7. In 2015, Gardiner and Kocher had been in a romantic relationship for several years and had been living together for some period of time. They were in a trusting relationship and looked forward to spending their lives together, although they did not plan to marry.

8. At some point in 2015, Gardiner and Kocher decided to split their time between Pinehurst, North Carolina and Seattle, Washington, where

2

Kocher's employer is based. Their plan was to live in both locations, both together and separately from time to time.

9. In June, 2015, Gardiner purchased a condominium in Seattle. He paid the entire purchase price himself and holds title to the property. Soon thereafter, the parties moved into the Seattle condominium.

10. In 2015, the parties planned that Gardiner would pay two-thirds of the purchase price for a home in Pinehurst and receive a two-thirds interest in the property. The down payment required to purchase the Pinehurst home was $600,000. Kocher requested, and Gardiner agreed, that Gardiner would pay $300,000 of the $600,000 down payment. Gardiner's intention and expectation was that the $300,000 would go toward his planned two-thirds interest in the property.

11. Gardiner went to a Bank of America branch in Pinehurst and wired $300,000 directly to the trust account of the local North Carolina closing attorney.

12. The $300,000 was not a gift, but was partial payment for a contemplated two-thirds interest in the real estate.

13. Although Gardiner paid half of the down payment, Kocher took legal title to the Pinehurst home in her name alone.

14. In obtaining a loan to purchase the Pinehurst property, Kocher's lender required that Kocher furnish documentation accounting for Gardiner's

$300,000. Kocher asked Gardiner to sign a document that would have indicated that the $300,000 that he would be paying toward the down payment was a gift to Kocher. Gardiner refused, consistent with the parties' understanding that the payment was not a gift but a payment toward his contemplated interest in the Pinehurst home.

15. The parties never followed through on the plan for Gardiner to pay the balance of the two-thirds of the purchase price or for Kocher to transfer a two-thirds interest in the Pinehurst house. Kocher retains title in her sole name and received the full benefit of Gardiner's $300,000 payment.

16. In September, 2015, Kocher and Gardiner decided to invest $100,000 each in a privately held company called Performitiv, LLC (f/k/a ClientLoyalty LLC). Because Kocher's assets were illiquid, she asked Gardiner to pay the $100,000 for her investment as a loan to her. Ms. Kocher wanted to avoid liquidating various stocks and options. Gardiner agreed. Accordingly, Gardiner wired $200,000 from Seattle to the trust account of the law firm handling the investment on behalf of Performitiv, LLC, in payment for both his and Kocher's interests. Gardiner and Kocher each received an interest in Performitiv, LLC as a result of the investment.

17. The parties contemplated repayment at some time in the future, but did not agree on a specific time for repayment of the $100,000 loan. They neither anticipated nor intended that there would be an immediate demand,

4

because the purpose of the loan was to fulfill Kocher's request that she not be required to liquidate assets to generate cash.

18. The parties' romantic relationship began to deteriorate in 2019.

19. In or around December, 2019, Gardiner asked Kocher to repay the $100,000 he had loaned for the Performitiv, LLC investment. Kocher did not repay the loan.

20. In March, 2020, Gardiner and Kocher ended their relationship.

21. In July, 2021, Gardiner demanded repayment of the $100,000 loan. Kocher refused.

22. At the same time, Gardiner also demanded repayment of the $300,000 he paid toward the Pinehurst home, to which Kocher has legal title and in which she resides. Kocher refused.

## FIRST CLAIM FOR RELIEF
(Breach of Contract--$100,000 payment for Performitiv interest)

23. All preceding paragraphs are incorporated by reference.

24. The parties had an express oral agreement that Kocher would repay the $100,000 that Gardiner advanced for her purchase of an interest in Performitiv, LLC as set forth above.

25. Kocher breached that agreement by failing to pay Gardiner the $100,000 upon his request in 2019 or his demand in 2021.

26. Kocher has received all of the benefit of the loan, and upon

5

information and belief, continues to own her interest in Performitiv, LLC.

27. Gardiner has been damaged by Kocher's breach of contract in the principal amount of $100,000.

### SECOND CLAIM FOR RELIEF
(Quasi-Contract/Unjust Enrichment—
$100,000 payment for Performitiv interest)

28. All preceding paragraphs are incorporated by reference.

29. In the alternative, and in the event that the Court finds that an enforceable express contract does not exist between the parties regarding Gardiner's $100,000 payment for Kocher's interest in Performitiv, Kocher is nevertheless liable to Gardiner by virtue of the parties' quasi-contract or contract implied in law.

30. By advancing $100,000 to Performitiv, LLC for the purchase of Kocher's interest in Performitiv, Gardiner conferred a measurable benefit on Kocher that was not gratuitous, and from which Kocher continues to benefit.

31. Kocher knew that the $100,000 paid on her behalf was not a gift, but was only paid by Gardiner because she wanted to avoid the costs associated with liquidating assets to make the payment herself.

32. It would be unjust for Kocher to continue to receive the benefit of her interest in Performitiv without reimbursing the purchase price advanced on her behalf.

33. Gardiner is entitled to recover damages for Kocher's breach of the

parties' quasi-contract in the principal amount of $100,000.

## THIRD CLAIM FOR RELIEF
(Implied-in-Fact Contract--$100,000 payment for Performitiv interest)

34. All preceding paragraphs are incorporated by reference.

35. In the alternative, and in the event that the Court finds that an enforceable express contract does not exist between the parties regarding Gardiner's $100,000 payment for Kocher's interest in Performitiv, Kocher is nevertheless liable to Gardiner by virtue of the parties' implied-in-fact contract.

36. The actions of the parties—in particular (a) Kocher's express request that Gardiner pay for her interest to avoid her having to liquidate illiquid assets and to incur a tax liability, (b) Gardiner's wire of an amount sufficient to purchase both of their interests, (c) Kocher's receipt of her interest and annual receipt of K-1 tax statements reflecting her interest, and (d) Gardiner's demand for repayment—all reflect the parties' agreement in fact and mutual intent that Kocher would repay the $100,000 upon express demand.

37. Kocher has breached the parties' implied-in-fact contract by failing to repay the $100,000 upon demand.

38. Gardiner is entitled to recover damages in the principal amount of $100,000 for Kocher's breach of the parties' implied-in-fact contract that she

7

would repay the $100,000 advanced for her Performitiv interest upon demand.

## FOURTH CLAIM FOR RELIEF
(Constructive Trust-$100,000 or Performitiv Interest)

39. All preceding paragraphs are incorporated by reference.

40. A constructive trust will arise by operation of law against one who in any way against equity and good conscience holds legal title to property which she should not.

41. It would be inequitable for Kocher to retain her interest in Performitiv without reimbursement of the purchase price to Gardiner.

42. As alternative relief, Gardiner is entitled to the imposition of a constructive trust on Kocher's interest in Performitiv and an order requiring her to convey her Performitiv interest to Gardiner.

## FIFTH CLAIM FOR RELIEF
(Quasi-Contract/Unjust Enrichment—
$300,000 payment for Pinehurst house)

43. All preceding paragraphs are incorporated by reference.

44. By advancing $300,000 for the purchase of the Pinehurst house in which Kocher took sole legal title, Gardiner conferred a measurable benefit on Kocher that was not gratuitous, and from which Kocher continues to benefit.

45. Indeed, upon information and belief, the Pinehurst house has appreciated in value since its purchase.

46. Kocher knew that the $300,000 paid on her behalf was not a gift.

8

In fact, Gardiner specifically declined to provide a "gift letter" when requested to do so, because the parties did not intend the payment as a gift.

47. It would be unjust for Kocher to continue to receive the benefit of the Pinehurst house without reimbursing the portion of the purchase price paid by Gardiner.

48. Gardiner is entitled to recover damages for Kocher's breach of the parties' quasi-contract in the principal amount of $300,000.

### SIXTH CLAIM FOR RELIEF
(Purchase Money Resulting Trust)

49. All preceding paragraphs are incorporated by reference.

50. A resulting trust arises when a person becomes invested with the title to real property under circumstances which in equity obligate her to hold the title and to exercise her ownership for the benefit of another. A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one person's money has been invested in land and the conveyance taken in the name of another.

51. Gardiner advanced $300,000 toward the purchase price of the Pinehurst house at or before the conveyance of legal title to Kocher.

52. Kocher has benefited from Gardiner's advance and continues to benefit from it.

53. Gardiner is entitled to the imposition of a resulting trust on the

9

Pinehurst real estate acquired by Kocher in part with the $300,000 paid by Gardiner, and to an order conveying such interest in that real estate to Gardiner as equity requires.

### SEVENTH CLAIM FOR RELIEF
(Constructive Trust-$300,000 or Pinehurst house)

54. All preceding paragraphs are incorporated by reference.

55. A constructive trust will arise by operation of law against one who in any way against equity and good conscience holds legal title to property which she should not.

56. It would be inequitable for Kocher to retain her interest in the Pinehurst house without reimbursement of the $300,000 paid by Gardiner.

57. As alternative relief, Gardiner is entitled to the imposition of a constructive trust on the Pinehurst house and an order requiring Kocher to convey a corresponding interest in the Pinehurst house to Gardiner.

### EIGHTH CLAIM FOR RELIEF
(Implied-in-Fact Contract--$300,000 payment for Pinehurst house)

58. All preceding paragraphs are incorporated by reference.

59. In the alternative, Kocher and Gardiner had an implied-in-fact contract that, in the event Kocher did not convey a two-thirds interest in the Pinehurst house to Gardiner, she would reimburse him for the benefit conferred on her.

60. The actions of the parties—in particular (a) Kocher's express

request that Gardiner pay half of the down payment, (b) Gardiner's payment of $300,000 as half of the down payment on the purchase price, (c) Kocher's receipt of legal title in her sole name, (d) Gardiner's express refusal to provide a "gift letter" in connection with the contemplated advance, and (e) Gardiner's demand for repayment—all reflect the parties' agreement in fact and mutual intent that Kocher would repay the $300,000 upon express demand in the event that she did not convey a two-thirds interest in the real estate to Gardiner as contemplated by the parties.

61. Kocher has breached the parties' implied-in-fact contract by failing to repay the $300,000 upon demand.

62. Gardiner is entitled to recover damages in the principal amount of $300,000 for Kocher's breach of the parties' implied-in-fact contract that she would repay the $300,000 upon demand.

WHEREFORE, Plaintiff prays that the Court:

1. Award damages to Plaintiff in the principal amount of $400,000, plus interest at the legal rate as provided by law;

2. Impose a constructive trust on Defendant's interest in Performitiv, LLC and order that the interest be conveyed to Plaintiff or that Gardiner's $100,000 be reimbursed;

3. Impose a resulting trust on Defendant's real estate in Pinehurst and order that such interest in the real estate be conveyed to Plaintiff as

11

equity requires or that Gardiner's $300,000 be reimbursed;

4. Impose a constructive trust on Defendant's real estate in Pinehurst and order that such interest in the real estate be conveyed to Plaintiff as equity requires or that Gardiner's $300,000 be reimbursed;

5. Enter such other and further orders in the Court's equitable power as are necessary to afford complete relief to Plaintiff;

6. Tax the costs of this action to Defendant; and

7. Grant such other relief as is just.

This the 22nd day of December, 2021.

GRAEBE HANNA & SULLIVAN, PLLC


/s/ Christopher T. Graebe
Christopher T. Graebe, NCSB No. 17416
4350 Lassiter at North Hills Ave., Suite 375
Raleigh, North Carolina 27609
Telephone: 919-863-9092
Facsimile: 919-424-6407
Email: cgraebe@ghslawfirm.com
*Counsel for Plaintiff*